**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Quierra Robey

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUIERRA ROBEY, on behalf of herself and those similarly situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>REBEL STORES, INC.,<br><br>                Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ. (TCPA)**<br>2. **VIOLATIONS OF THE FLORIDA TELEPHONE SOLICITATION ACT, § 501.059 (FTSA)**<br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, QUIERRA ROBEY (hereinafter "Plaintiff"), brings this class action against REBEL STORES, INC. (hereinafter "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, (hereinafter the "TCPA") and the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA"). In support, Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge, as follows:

## INTRODUCTION

1.     Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, resulting from Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff on Plaintiff's personal cellular telephone, thereby invading Plaintiff's privacy.

2.     To promote and market its services, Defendant, directly or through persons on its behalf, violates Fla. Stat. § 501.059 and 47 C.F.R. 64.1200(c) and (d) by failing to honor opt-out instructions and Florida's Caller ID Rules.

3.     Plaintiff and Class Members received unwanted spam telemarketing text messages from Defendant without regard to the FTSA, the TCPA, and for individual privacy. This lawsuit challenges all telemarketing text messages that were sent by Defendant, or on Defendant's behalf, to Plaintiff and Class Members from approximately March 2020, through the date of preliminary approval of class certification.

4.     The FTSA and TCPA were designed to prevent telemarketing text messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021),

https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021).

5.     Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

6.     The TCPA and FTSA were enacted to protect consumers from unsolicited and unwanted telephone communications exactly like those alleged in this case.

7.     Plaintiff seeks an injunction requiring Defendant to cease all unsolicited phone messages to numbers on its internal opt out list, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and members of the Class (defined below) per violation, together with court costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute, and this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's FTSA, state law claims.

9.     The Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this District, Defendant conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

11.     Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its principal place of business being in this District, its telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

**PARTIES**

12.     Plaintiff is, and at all times mentioned herein is a resident of the State of Florida, County of Hillsborough.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

13.     Defendant is a limited liability company with its principal address located at 1450 North Benson Ave., Suite A, Upland, California 91786. Defendant is a company engaged in retail, and at all times relevant hereto a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

14.     Defendant is, and at all times mentioned herein was a company and a "person," as defined by 47 U.S.C. § 153(39).

15.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendant conducted business in the State of California.

16.     Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

**TCPA BACKGROUND**

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example,

computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

19.     The TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's Do-Not-Call provision of 47 C.F.R. § 64.1200(c).

20.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."   TCPA, Pub.L. No. 102-243, § 11.   Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

21.     As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.   A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

22.     Text messages are calls and are subject to the TCPA.  *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

23.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant calls to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

24.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

25.    As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members on a DNC.

26. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012). Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

27. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call

does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

28.     The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

29.     The FTSA's Caller ID Rules require that persons making Telephonic Sales Calls[2] transmit – to the consumer's caller identification service – a telephone number that is capable of receiving telephone calls. And, unlike claims for damages for text message solicitations the called party does not consent to receive, claims for violations of the Caller ID Rules are equally applicable to all Telephonic Sales Calls (phone calls, text messages, or voicemails), regardless of whether they are solicited or consented to, and irrespective of whether the offending phone call, text message or voicemail is traditional, automated, or recorded.

30.     In short, whenever a person either makes any type of Telephonic Sales Call or causes one to be made, that person must ensure that a telephone number is transmitted with that Telephonic Sales Call to the consumer's Caller ID service that is capable of receiving telephone calls and connects to either the telephone solicitor or the Defendant. Whenever Telephonic Sales Call are made and the phone number that is transmitted to the caller identification service is not capable of receiving phone calls and/or does not connect to the caller or seller because it is not configured for two-way communication, the Caller ID Rules have been violated and the aggrieved party may bring an action for liquidated damages, and injunctive and declaratory relief.

---

[2] "Telephonic Sales Call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

31.    This number is used by Plaintiff for residential purposes and is considered by her to be a residential number.

Plaintiff's telephone number ending in 1827 has received Defendant's Telephonic Sales Calls, including:





///

///

///





32.    Defendant    transmitted    1410200508,    1410200514,    1410200515,    and

1410200516 to Plaintiff's Cell Phone's caller identification service when it transmitted

the telemarketing text messages. Through the investigation of counsel calls to

1410200508, 1410200514, 1410200515, and 1410200516 could not be completed as

dialed.

33.    The FTSA's Caller ID Rules require any person "who makes a telephonic sales

call or causes a telephonic sales call to be made to … transmit … the originating

telephone number," or, as a substitution, "the name of the seller on behalf of which a

telephonic sales call is placed and the seller's customer service telephone number,

which is answered during regular business hours" ("Customer Service Number"), to

the receipt's caller identification service.

34.    Here, with each of Defendant's telemarketing text messages, Defendant

transmitted a telephone number to the Caller ID Service of Plaintiff and the Plaintiff

Class that was not capable of receiving telephone calls and failed to connect the recipients, including Plaintiff, to the Defendant, as explicitly required by the FTSA's Caller ID Rules.

35. Further, Plaintiff never provided Defendant with her prior express written consent or any other party acting on Defendant's behalf to authorize the subject telemarketing text messages. Indeed, prior to making (or knowingly allowing a third party to make on its behalf) the subject telemarketing text messages Defendant lacked a signed written agreement with Plaintiff that complies with the requirements of the TCPA and Fla. Stat. § 501.059(1)(g).

36. In an attempt to opt-out of any further telemarketing text communications with Defendant, Plaintiff on various occasions texted Defendant the word "stop." Defendant ignored Plaintiff's requests and continued to text promotional telemarketing messages despite Plaintiff's clear revocation of any alleged prior consent.

37. Defendant failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

38. To the extent Defendant outsourced its telemarketing spam text messaging campaigns, it is nonetheless liable for texts that violate the TCPA and/or FTSA.

39. Defendant is liable for third-party actions if it took steps to cause the telemarketing texts to be made, or if the telemarketing texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

40. Defendant had the ability and/or right to control the method and scope of the telemarketing text message campaigns sent to Plaintiff and the Class members.

41. Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing text message campaigns sent to Plaintiff and the Class members.

42.    Defendant authorized the use of its trade name in the telemarketing text messages sent to Plaintiff and the Class members.

43.    Defendant knowingly accepted the marketing benefits of the telemarketing text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

44.    Given Defendant's control over the telemarketing text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

45.    Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

46.    Compliance with the FTSA will not result in Defendant having to cease its business operations.

47.    Compliance with the FTSA will not result in Defendant having to alter the prices of goods or services it provides in the marketplace.

48.    Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

49.    Because Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

50.    The telemarketing text messages at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls.

51.     Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing text messages.

52.     For example, apart from forcing Plaintiff to spend time investigating the source of the text messages and invest time researching and hiring counsel, Plaintiff received some of the unsolicited telemarketing text messages while she was sharing personal and intimate time with family. This caused Plaintiff to stop to check her phone and waste time reviewing the messages to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal and daily life.

53.     Because Plaintiff and Class Members continued to received telemarketing texts from Defendant after they texted "stop" revoking any conceivable consent, demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

54.     Despite opting out from Defendant contacting Plaintiff, Defendant made several unsolicited telemarketing calls to Plaintiff on her cellular telephone.

55.     Such telephone calls constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

56.     Upon information and belief, Defendant sent substantially similar, if not identical, unsolicited telephone messages to Plaintiff and thousands of other consumers who also opted out from communication from Defendant in violation of the TCPA and FTSA.

57.     Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5) and the FTSA.

58.     Upon information and belief, Defendant did not make the telephone solicitations in error.

59. All of the unsolicited telephone messages by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

60. Defendant's unsolicited phone messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

61. Defendant's phone messages also inconvenienced Plaintiff and caused disruption to Plaintiff's daily life.

62. Defendant's unsolicited phone messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiff's number and who the Defendant was.

63. Receiving Defendant's unsolicited phone messages drained Plaintiff's phone battery and caused Plaintiff additional electricity expenses and wear and tear on Plaintiff's phone and battery.

64. Furthermore, Defendant's phone messages took up memory on Plaintiff's phone. The cumulative effect of unsolicited phone messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

65. Through this conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

66. Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to send unsolicited phone messages to Plaintiff's personal telephone.

67. Defendant's unsolicited phone messages forced Plaintiff to be deprived of the privacy and utility of Plaintiff's cellular phone by forcing Plaintiff to ignore or reject Defendant's disruptive calls, and/or silence her cellular phone as a result of Defendant's incessant telephone solicitations.

68. The TCPA and FTSA were intended to give individuals control over how and

where they receive telephonic communications. When Defendant's sent unsolicited messages to Plaintiff without consent, after the opt out, Defendant failed to address or respect the limitations imposed by the TCPA and FTSA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA and FTSA.

69. Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

70. Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times, as well as the FTSA.

## **STANDING**

71. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *The "Injury in Fact" Prong*

72. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

73. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent a telephone solicitation to Plaintiff's cellular telephone. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

74. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by sending text messages to Plaintiff's cellular telephone, despite Plaintiff opting out from any communication from Defendant. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time answer the calls. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

75. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

76. The above-mentioned unsolicited phone calls were directly and explicitly linked to Defendant. Defendant's agents identified the Defendant as "American Solar Specialist," and "Apricot Solar" in an attempt to solicit business from Plaintiff. These unsolicited and auto-dialed phone calls are the sole source of Plaintiff's and the Class's injuries and directly traceable to Defendant. There, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

77. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

78. In the present case, Plaintiff's Request for Relief includes a request for injunctive

relief and statutory damages for each text message made by Defendant and telephone calls to cellular numbers who opted out from any communication from Defendant and thus revoked consent to be contacted by Defendant, as authorized by statute in 47 U.S.C. § 227 the FTSA. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

79.     Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined as follows:

> **Internal DNC Class: All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing text message from or on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing text messages.**

> **FTSA ID Class:  All persons and entities that reside in Florida whose caller identification service was transmitted a telephone number that was not capable of receiving telephone calls and/or failed to connect callers to the Defendant's when Defendants telemarketing calls were transmitted to them since July 1, 2021.**

> **FTSA Internal DNC Class: All persons within the State of Florida who received any text message from or on behalf of Defendant at least 15 days *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with "stop" or similar opt-out instruction between July 1, 2021, to the date of Class Notice.**

81.     Excluded from the Class are Defendant, its officers and directors, members of

its immediate families and its legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

82.     Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

83.     Further, Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members who opted out from any communication from Defendant, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class. Plaintiff and the Class members were damaged thereby.

84.     <u>Numerosity</u>: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized spam text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

85.     Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's texting logs and marketing records.

86.     Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary

and/or appropriate by the Court.

87. <u>Ascertainability</u>: The members of the Class are ascertainable because the Class is defined by reference to objective criteria. In addition, the members of the Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

88. <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendant without prior express written consent to receive such telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class. Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA and the FTSA.

89. Plaintiff and members of the Class each received at least one telephonic sales call, advertising Defendant's services, without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

90. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited text messages to Plaintiff's cellular telephone from Defendant while Defendant had no express written consent to contact Plaintiff. Thus, Plaintiff's injuries are typical to Class Members.

91. Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

92. Plaintiff's claims are based on the same theories, as are the claims of the members of the Class.

93. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally

sending messages to their cellular phones without prior express consent. Plaintiff and the Class were damaged thereby.

94.     Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the Class with whom she is similarly situated, as demonstrated herein. Plaintiff acknowledges that she has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class. Plaintiff will vigorously pursue the claims of the members of the Class. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA and FTSA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

95.     Predominance: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

96.     Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

        a.  What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing phone calls;

        b.  Whether Defendant initiated telemarketing text messages sent to Plaintiff and Class members;

c. How Defendant obtained the numbers of Plaintiff and Class members;

d. Whether Defendant can meet its burden of showing that it had prior express written consent to send such texts;

e. Whether Defendant willfully or knowingly violated the FTSA and its regulations;

f. Whether Defendant willfully or knowingly violated the TCPA;

g. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

h. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

i. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

j. Whether Plaintiff and the Class are entitled to any other relief.

99. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

• If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.

• The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.

• The pursuit of separate actions by individual members of the Class could

create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

- The damages suffered by each individual member of the Class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the Class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

100. Class-Wide Injunctive Relief: Moreover, class certification is warranted because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA and FTSA, and to order Defendant to provide notice to them of their rights under the TCPA and FTSA to statutory damages and to be free from unwanted text messages.

101. Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

102. Plaintiff and the members of the Class have all suffered irreparable harm as a

result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

103.   A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

104.   Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

105.   This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §§ 227, ET SEQ.

### (On behalf of Plaintiff and the Internal DNC Class)

106.   Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

107.   Defendant and/ its agents sent unsolicited telephone messages to Plaintiff and the other members of the Class.

108.   Defendant sent these telephone messages without the consent of Plaintiff and the other members of the TCPA Class.

109. Defendant's conduct was negligent, willful or knowing.

110. Defendant knew or should have known that it did not have prior express written consent to send these messages in violation of the TCPA.

111. Defendant negligently, willfully, and/or knowingly made unsolicited telephone communications to Plaintiff and Class members. For instance, Defendant could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and/or Class members, yet disregarded such information and sent the illegal and unwanted solicitation messages to Plaintiff and the Class.

112. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

113. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's violations, Plaintiff and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

114. Plaintiff and the Class members are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls and sending messages, except for emergency purposes, to any cellular telephone numbers registered on Defendant's internal DNC in the future.

115. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by sending advertising and marketing texts to Plaintiff's cellular telephone number without prior express written consent.

116. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the Class, are entitled to damages

in an amount to be proven at trial.

117. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## COUNT II

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT REGARDING THE INTERNAL DO-NOT CALL

### 47 C.F.R. § 64.1200(C)

### (On behalf of Plaintiff and the Internal DNC Class)

118. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

119. 47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

*(1) Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to

a party other than the person or entity on whose behalf a telemarketing call is made or an <u>affiliated</u> entity. . .

(6) *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

120.   Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

121.   Plaintiff and others Internal DNC Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

122.   Defendant failed to honor Plaintiff's and the Internal DNC Class members opt-out requests.

123.   At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

124.   Defendant sent unsolicited and unauthorized telephone messages to the cellular telephones of Plaintiff and the Class members, cellular telephones which were on Defendant's internal DNC to Plaintiff and the Class.

125.   Defendant knew that it did not have prior express written consent to send these text messages, and knew or should have known that it was sending text messages to cellular numbers on Defendant's internal DNC in violation of the TCPA.

126.   Defendant willfully or knowingly made telephone calls to be sent to Plaintiff's and Class members' cellular telephone numbers on Defendant's internal DNC. For instance, Defendant could have determined from a review of its own business records that it could not contact Plaintiff and/or Class members yet disregarded such information and placed illegal and unwanted solicitation text messages.

127.   Defendant's telephone calls caused Plaintiff and members of the Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

128. Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

129. Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on Defendant's internal DNC, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

130. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

131. Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

132. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## COUNT III
## VIOLATIONS OF FLORIDA STATUTE § 501.059(8)
## (On behalf of Plaintiff and the FTSA ID Class)

133. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

134. It is a violation of the FTSA to initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the person that he or she does not wish to receive an outbound call, text message, or voicemail transmission. Fla. Stat. § 501.059(5)(a), (b).

135. Plaintiff and the FTSA Internal DNC Class Members made requests to

Defendant not to receive spam telemarketing text messages from Defendant.

136.    Defendant failed to honor Plaintiff's and the FTSA Class Members opt-out requests.

137.    In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing text messages to Plaintiff and the FTSA Class members, at least 15 days after they had previously communicated to Defendant that they did not wish to receive any text messages from Defendant.

138.    As a result of Defendant's conduct, and pursuant to Florida Statute § 501.059 (10)(a), Plaintiff and the FTSA Internal DNC Class are entitled to an award of $500.00 in statutory damages, for each violation. To the extent Defendant's misconduct is determined to be knowing and/or willful violations of the FTSA, the Court should, pursuant to Fla. Stat. § 501.059(10)(a)(b), treble the amount of statutory damages recoverable by the members of the FTSA Internal DNC Class.

139.    Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to section 501.059(10)(a), prohibiting such conduct in the future.

140.    Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

- An order declaring that Defendant's actions, as set out above, violate the FTSA, and TCPA and its implementing regulations;

- Statutory damages of $500 per text message, for each FTSA and TCPA violation;

- Willful damages at $1,500 per text message, for each FTSA and TCPA violation;

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future;

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

141. Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

Dated: April 15, 2024                    Respectfully submitted,

                                **KAZEROUNI LAW GROUP, APC**

                    By: _____
                                Abbas Kazerounian, Esq.
                                David J. McGlothlin, Esq.
                                Mona Amini, Esq.
                                Gustavo Ponce, Esq.
                                *Attorneys for Plaintiff*